## Case No. 2,571.

### CHADWICK et al. v. The ADELAIDE.

[Hoff. Op. 459.]

District Court, N. D. California. Oct. 20, 1859.

ACTION FOR BREACH OF CHARTER PARTY—PROOF OF DAMAGE—PENALTY—ESTIMATED PROFITS.

[1. In an action on a charter party, for a breach thereof, by reason of the refusal of the master to commence the voyage, nominal dam-ages only are recoverable, where the libellant fails to prove some actual damage suffered, notwithstanding the agreement binds the par-ties to a penalty for its breach.]

[2. The sum mentioned in the penal clause of the instrument will be regarded as a penalty, and not as liquidated damages.]

[3. The due performance of the voyage be-ing subject to many future contingencies, esti-mated profits cannot be computed as an element of damage. The Tribune, Case No. 14,171, fol-lowed.]

In admiralty.

J. B. Manchester, for libellants.

Gregory Yale, for claimant.

HOFFMAN, District Judge. The libel in this case is for the breach of a charter party. The execution of the instrument, and the refusal of the master to sail on the voyage, are admitted. By the terms of the charter party, the libellants agreed to furnish at Johnson's islands, in the Pacific, a full cargo of guano, in bulk or in bags, and also bags enough to line the ship. They were also to place on board three lighters, and all their men, on their arrival at the islands, were to be employed in loading the vessel, and, in case the crew were required to assist, they were to be paid $1 per day each. Ninety lay days were allowed for taking in the cargo, and, for every day's detention beyond that time, $150 was to be paid the ship. There were other stipulations in the charter party not material to be noticed. No proof what-ever was offered on the part of the libellants that they were ready and willing to furnish the cargo proposed, or to provide the bags to line the ship as agreed upon. Neither did they show that they were ready to furnish three lighters, nor that they had any men on the islands to assist in loading the vessel.

No testimony as to the damages sustained by the ship's refusal to sail on the voyage was offered, except the statement of Mr. Landswert, a chemist in this city, that guano of the quality of that found on these islands would be worth in New York $30 or $35 per ton. He did not, however, assert this on knowledge or information of any sales; but it was an estimate of the value of the guano founded on an analysis by himself. The libellants, on this testimony, seek to recover the sum of $35,000, being the amount men-tioned in the penal clause of the charter party. This sum is claimed in the libel as "the stipulated sum agreed upon between the parties to the said charter party, as dam-

ages *for a breach or violation of the same.*" This claim is evidently based on the idea that the amount is mentioned in the charter party as liquidated damages, and not as a penalty. But such a construction of that instrument is inadmissible. The sum mentioned is called in the charter party "the penal sum of $35,000," in the usual form in which the penalty is stated in that clause of the instrument by which the parties bind to each other, respectively, the vessel, freight, etc., and the merchandise to be taken on board, for the true performance of their covenants. I am not aware that it has ever been doubted that the sums so stated in charter parties were to be considered penalties, and not liquidated damages. In all such cases, the recovery of the party suing on such penal clauses is restricted to the damage actually sustained. Abb. Shipp. p. 364. It does not appear that any damage was actually sustained by the libellants. The expected profits which might have been realized on the voyage cannot be computed as proper items of damages.

In a somewhat similar case, Judge Story says: "The due performance of the voyage was subject to many future contingencies, and the item of profits is too uncertain in its nature to form any basis of damages, even if, in a case like the present, there was no other objection to it." The case in which these observations were made was much stronger than the case at bar, for the goods which the libellant was under contract to deliver to the government of Cuba, were actually put on board of the vessel, and relanded by the master in breach of the charter party. But in the case at bar the vessel never reached the place where her cargo was to be laden. It is not shown that the libellants could have furnished a cargo, nor that they would have had men or lighters to place it on board; nor does it appear what time would have been required for the purpose, nor whether the ship might not have been entitled to damage at the rate agreed,—$150 for a greater or less period,—nor whether in loading the ship the services of the crew might not have been required.

To allow as damages estimated net profits of the sale of a cargo of guano at New York, deducting only the freight, is to presume without any proof that the vessel would have safely arrived at the islands; would have obtained a full cargo of guano; that it would have been put on board within the time limited in the charter party; that the services of the crew would not have been required; and therefore that the one dollar per day agreed to be given would not have been due; that the libellants would have furnished three lighters for loading the cargo, and would have had men to assist in the operation; and, finally, that the vessel would have safely made the voyage to New York, delivered and been paid for her cargo, at rates such as a chemist of this city thinks would

represent the value of the guano, samples of which he analysed. If in the case of The Tribune [Case No. 14,171] the estimated profits were too uncertain to be admitted as an item of damages, a fortiori the rule must be applied to the case at bar.

The libellants have not shown that they incurred any losses or expenses in and about the voyage, or in procuring lighters, or making preparations for it—contemplated—nor in endeavoring to procure another vessel. That another vessel could readily have been obtained, provided security for the charter money were furnished, is clear. But the masters and agents of ships at this port seem to have been distrustful of the security which would have been afforded by the proposed cargo, and perhaps were doubtful whether a cargo would be furnished them—doubts which the refusal of the Adelaide to sail on the voyage tended to confirm. I cannot, therefore, perceive how I can award any damages, except nominal, for the breach of contract complained of. A decree to that effect must therefore be entered. .